UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

KALONDA T. SAGER,                   )
                                    )
          Plaintiff,                )
                                    )
     v.                             )        Case No. 1:23 CV 160 RWS
                                    )
MARTIN O'MALLEY,[1]                 )
Commissioner of Social Security,    )
                                    )
          Defendant.                )

## MEMORANDUM AND ORDER

Plaintiff Kalonda Sager brings this action seeking judicial review of the Commissioner's decision denying her applications for disability insurance and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, 1381.  Sections 205(g) and 1631(c)(3) of the Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), provide for judicial review of a final decision of the Commissioner.  Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision of the Commissioner.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## Procedural History

Plaintiff was born in 1982 and protectively filed her applications on June 7, 2019.  (Tr. 43.)  She alleges disability beginning November 15, 2019,[2] because of lupus, abnormal joint swelling, and lower back pain.  (Tr. 318.)  Plaintiff graduated high school and then took a one-year business class.  (Tr. 72.)

Plaintiff's current DIB application was initially denied on December 30, 2019.  (Tr. 150-47.)  Her current SSI application was initially denied on January 10, 2020.  (Tr. 156-159.)[3]  After a hearing before an ALJ on January 10, 2023, the ALJ issued a decision denying benefits on February 1, 2023.  (Tr. 43-52, 66-83.)  On September 5, 2023, the Appeals Council denied plaintiff's request for review.  (Tr. 1-4.)  The ALJ's decision is now the final decision of the Commissioner.  42 U.S.C. § 1383(c)(3).

In this action for judicial review, plaintiff contends that her impairments meet the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, for lupus and Sjögren's syndrome (Listings 14.02 and 14.10).  She also argues that her residual functional capacity (RFC) is not supported by substantial evidence because the ALJ improperly relied on her treatment regimen when considering her

---

[2] Plaintiff initially alleged an onset date of November 2, 2018, but later amended it to November 15, 2019.  (Tr. 43.)

[3] The record reflects that plaintiff applied for, and was denied, benefits on three prior occasions.  (Tr. 85-94, 101-110,  121-129.)

claim and failed to properly summarize and develop the record.  She asks that I reverse the Commissioner's final decision and remand the matter for further evaluation.  For the reasons that follow, I will affirm the Commissioner's decision.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt plaintiff's recitation of facts (ECF 11) only to the extent they are admitted by the Commissioner (ECF 12-1).  I also adopt the Commissioner's statement of additional facts, as they are not disputed by plaintiff (ECF 12-1).  Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A.   <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must prove that he is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that

[she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step 1 of the process, the Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, at Step 2 the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled. At Step 3, the Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled. At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process). If the claimant is unable to perform her past

4

work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis. If she meets this burden and shows that she is unable to perform his past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has nonexertional limitations, the Commissioner may satisfy his burden at Step 5 through the testimony of a vocational expert. *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). "Substantial evidence means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up).

Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider whether a claimant's subjective complaints are consistent with the medical evidence. *See Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (listing factors such as the claimant's daily activities, the duration, frequency, and intensity of the pain, precipitating and

aggravating factors, dosage, effectiveness and side effects of medication, and functional restrictions).[4]  When an ALJ gives good reasons for the findings, the court will usually defer to the ALJ's finding.  *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

B.    ALJ's Decision

In his written decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 15, 2019, the alleged onset date.  (Tr. 46.)  The ALJ found that plaintiff had the following severe impairments: systemic lupus erythematosus (SLE or lupus), Sjögren's syndrome, fibromyalgia, obesity and hypothyroidism.  (Tr. 46.)  The ALJ determined that plaintiff's impairments or combination of impairments did not meet or medically equal listed impairments 14.02 or 14.10 in 20 C.F.R. Part 404, Subpart P, Appendix 1, for lupus and Sjögren's syndrome, because plaintiff's records did not support weight loss,

---

[4] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character.  However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record."  *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

fatigue, malaise, or fever, and she did not show marked limitations in activities of daily living, social functioning or completing tasks. (Tr. 46.) The ALJ found plaintiff to have the residual functional capacity (RFC) to perform light work with the following limitations:

> she can climb no ladders, ropes, or scaffolds, but she can occasionally climb ramps or stairs, and can occasionally kneel, crouch and crawl. She is limited to frequent use of her hands for fine manipulating/fingering. She is to avoid exposure to extreme cold and extreme heat. She is to avoid exposure to all operational control of moving machinery, working at unprotected heights, and the use of hazardous machinery.

(Tr. 46-47.) The ALJ found that plaintiff had no past relevant work and relied upon vocational expert testimony to support a conclusion that that there were significant jobs in the economy of marker, collator operator, and router that plaintiff could perform. (Tr. 51.) The ALJ therefore found plaintiff was not disabled. (Tr. 51.)

C.   <u>Listings 14.02 and 14.10</u>

Plaintiff first argues that she meets the criteria for Listings 14.02 and 14.10 for lupus and Sjögren's syndrome and the ALJ erred in concluding that she did not.

"The listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he

8

actually can perform his own prior work or other work." *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990) (cleaned up). But "merely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing. An impairment that manifests only some of the listing criteria, no matter how severely, does not qualify." *Lott v. Colvin*, 772 F.3d 546, 549 (8th Cir. 2014) (cleaned up). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (cleaned up). Furthermore, the question is whether the ALJ "considered evidence of a listed impairment and concluded that there was no showing on the record that the claimant's impairments met or are equivalent to any of the listed impairments." *Karlix v. Barnhart,* 457 F.3d 742, 746 (8th Cir. 2006) (cleaned up). "The fact that the ALJ does not elaborate on this conclusion does not require reversal where the record supports his overall conclusion." *Id.* (cleaned up).

The "severity standards for Listing-level impairments are intentionally high, because the listings for adults were designed to operate as a presumption of disability that makes further inquiry unnecessary and ends the sequential process." *French v. O'Malley,* Case No. 4:22CV1031 RHH, 2024 WL 245641, at *7 (E.D. Mo. Jan. 23, 2024) (cleaned up). Plaintiff bears the burden of proving that an

impairment or combination of impairments meets or equals the criteria for a specific listing.  *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

The ALJ did not substantially err in concluding that plaintiff's impairments did not meet Listings 14.02 for lupus and 14.10 for Sjögren's syndrome. Each Listing requires either systemic lupus erythematosus as described in 14.00D1 or Sjögren's syndrome as described in 14.00D7 with:

  A. Involvement of two or more organs/body systems, with:

     1. One of the organs/body systems involved to at least a moderate level of severity; and

     2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

Or

  B. Repeated manifestations of systemic lupus erythematosus or Sjögren's syndrome, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

     1. Limitation of activities of daily living.

     2. Limitation in maintaining social functioning.

     3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 14.02 and 14.10.  The regulation defines "severe fatigue" as a "frequent sense of exhaustion that results in significantly reduced physical activity or mental function."  *Id.* at 14.00C2.

10

"Malaise" means "frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." *Id.*

The ALJ concluded that plaintiff could not meet part A-2 because the medical records did not support the required symptoms of weight loss, fatigue, malaise or fever.  (Tr. 46.)  Plaintiff argues the ALJ erred because her "fatigue and malaise are documented," citing two instances out of a 1000-page record in which plaintiff mentions feeling fatigued.  *See* ECF 10 at 6, citing Tr. 709 and 897. Plaintiff also points to one instance in which she complains of feeling forgetful, and three instances in which she complains of depression to support her argument that she meets the listing's definition of "malaise."  *See* ECF 10 at 6, citing Tr. 709, 835, 897.  However, plaintiff's medical records as a whole do not demonstrate that the ALJ substantially erred by concluding that plaintiff's impairments did not meet the Listings because they do not demonstrate that plaintiff's isolated complaints of fatigue and malaise rise to the frequency and severity levels necessary to meet the Listings.  And plaintiff points to no evidence that would contradict the ALJ's finding that the records did not support severe involuntary weight loss or fever.  (Tr. 46.)  Moreover, plaintiff points to nothing indicating a moderate level of severity of organ/body systems involvement as required by part A-1.  As both are required to meet part A of the Listing, plaintiff has not met her burden of demonstrating that she meets part A of the Listings.

11

The ALJ also concluded that plaintiff could not meet her burden of demonstrating that she met part B of the Listings because, in addition to the absence of required symptoms, he found that none of the limitations listed reached the marked level.  (Tr. 46.)  As plaintiff makes no argument and points to no evidence in the record to dispute these findings, she has not met her burden of demonstrating that her impairments met Listings 14.02 and 14.10.  The ALJ's determination that plaintiff's impairments do not meet the Listings is entitled to deference.

D.    RFC Determination

RFC is defined as "what [the claimant] can still do" despite her "physical or mental limitations."  20 C.F.R. § 404.1545(a).  "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).  The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations.  *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

12

Plaintiff claims that her RFC is not supported by substantial evidence because the ALJ improperly summarized the medical evidence, made his own medical findings with respect to her treatment regimen, and failed to fully develop the record.  Plaintiff's generalized assertions of error make it difficult to analyze plaintiff's arguments.  There is, however, substantial evidence on the record as a whole to support the ALJ's RFC determination.

To the extent plaintiff suggests that the ALJ's RFC is not supported by substantial evidence unless there is a medical opinion which addresses her specific functional limitations, "there is no requirement that an RFC finding be supported by a specific medical opinion."  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).[5]  Instead, the RFC must be determined by the ALJ based on all the relevant evidence, which includes her subjective symptoms, her testimony, the medical evidence, and her daily activities.

In this case, after considering all this evidence, the ALJ concluded that plaintiff retained the capacity to perform light work, with significant modifications tailored to her credible limitations.  In so doing, he did not substantially err.  The ALJ properly evaluated the medical evidence using the new regulations applicable to plaintiff's claim.  *See* 20 C.F.R. § 416.920c(a) (2017) (when evaluating claims

---

[5] Plaintiff suggests that the ALJ should have "sought more information" about her treatment regimen from a medical expert instead of making his own judgment.

filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (internal quotation marks and citation omitted); *See* 20 C.F.R. § 416.920b(c)(1)-(3) (2017) (statements on issues reserved to the Commissioner, such as statements that a claimant is or is not disabled, are deemed evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled.").

The ALJ's RFC is supported by the objective medical evidence of record as a whole. The ALJ reviewed the medical record in this case, including treatment records which predated her onset date, and properly considered plaintiff's treatment regimen in conjunction with the other evidence to support his decision. In fashioning plaintiff's RFC, the ALJ not only considered plaintiff's subjective complaints, (Tr. 47-49), but also her physical examinations which consistently documented little, if any, range of motion, strength limitations, or sensation loss. (Tr. 49-50, 641, 647-648, 729, 794, 806, 818, 827, 862, 886, 898, 920, 995.)

Treatment notes from Nathan Sprengel, D.O., on March 6, 2019, show that despite plaintiff not taking medication or undergoing therapy, she had no current swelling of joints and had normal movement of all extremities. (Tr. 446-449.) He referred her to a rheumatologist Nivedita Nagam, M.D.

Plaintiff was examined by Dr. Nagam on March 18, 2019. (Tr. 665-68.) She reported "hurting all over for the last 4-5 years," daily swelling, morning stiffness in her low back, and numbness in her lower extremities. (Tr. 665.) She smoked marijuana every few days. (Tr. 665.) Her physical examination was within normal limits with only mild diffuse pain in the lower back, but a good range of motion in all extremities, no synovitis, no rash, and normal pulses in her feet with intact sensation. (Tr. 666.) She was advised to try daily antihistamines and see an allergist. (Tr. 667.)

Plaintiff saw Dr. Nagam again on May 3, 2019, complaining of worsening hives. (Tr. 680.) Examination revealed erythematous macules over plaintiff's lower extremities and abdomen, but no edema or synovitis, mild diffuse musculoskeletal pain in the lower back, and good range of motion in all extremities. (Tr. 682.) Dr. Nagam noted that recent antinuclear antibody tests were positive and she mild pancytopenia. (Tr. 682.) Plaintiff was started on Prednisone and Hydrocloroquine and was advised to start a daily antihistamine. (Tr. 682.) By June 7, 2019, plaintiff reported symptom improvement and no side

15

effects from the medication. (Tr. 690.) Plaintiff complained of morning stiffness in her low back, lasting an hour, swelling in different areas of the body, and numbness in her lower extremities. (Tr. 690.) She reported smoking marijuana every few days. (Tr. 690.) Her exam was within normal limits, but she had mild diffuse musculoskeletal pain with swelling over her right shoulder with good range of motion in all extremities. (Tr. 692.) No changes were made to her medications or treatment plan. (Tr. 692.)

Plaintiff had a consultative examination with Maryann Von Felt, APRN, ANP-BC, on November 14, 2019. (Tr. 522-25.) Plaintiff reported swelling on her face and body and joint stiffness, which made it difficult to walk and caused stiffness in her shoulders, elbows, wrists, fingers, back, knees, and ankles. (Tr. 522.) Plaintiff denied cardiac, gastrointestinal, pulmonary, nervous system or renal sequelae. (Tr. 522.) She also reported low back pain and tingling in her hands and toes. (Tr. 522-23.) Plaintiff denied seeing a chiropractor or pain management doctor. (Tr. 523.) Plaintiff smoked marijuana every other day for pain. (Tr. 523.) Upon examination plaintiff had a normal gait and range of motion, did not appear to be in pain, sat comfortably, had no redness, warmth, swelling or nodules in her upper extremities, did hand maneuvers without issue despite having generalized wrist and hand swelling, had no tenderness, redness, warmth, fluid, laxity or crepitus of the knees, ankles, or feet, performed tandem gait without difficulty, and

squatted to 75 degrees without difficulty despite generalized effusion of the left knee. (Tr. 524-527).[6]  She had hive-like welts to the left axilla, right abdomen, and left upper arm, along with upper and lower eyelid edema. (Tr. 524.)  Urticarial wheals were present. (Tr. 525.)  Plaintiff complained of lumbago and stated that bending produced back pain, but her lumbar spine exam and range of motion were normal. (Tr. 525.)

Plaintiff was seen by endocrinologist Wu Wen, M.D., on March 20, 2020 for evaluation and management of hypothyroidism. (Tr. 710.)  She reported fatigue, difficulty with weight management, swelling of hands, feet, and face, and intermittent rashes, intermittent chest pain, headache, and nausea, cold intolerance, poor concentration, anxiety and depression. (Tr. 710.)  Examination was normal except for a supple neck with nodular goiter. (Tr. 711.)  Diagnosis was hypothyroidism due to thyroiditis and nodular goiter. (Tr. 49.)  She had a thyroid sonogram on April 6, 2020, which revealed a mildly hyperemic goiter. (Tr. 713.)

Plaintiff had a consultation with rheumatologist Amjad Roumany, M.D., on June 8, 2020. (Tr. 729-35.)  Plaintiff reported aches and pains in the joints of her hands and feet and some swelling with an intermittent skin rash. (Tr. 728.)

---

[6] At the hearing, plaintiff's counsel stated that the onset date was amended to be "consistent with [this] consultative exam" because it is "the most comprehensive medical evidence in the early records and actually does a fairly good assessment of all the ongoing complaints that [plaintiff] has." (Tr. 70-71.)

Examination revealed no signs of pain, grossly normal tone and muscle strength, normal gait, normal range of motion, no signs of synovitis, no abnormal rash, and no enlarged or supraclavicular nodes. (Tr. 729.)  Plaintiff showed no signs soft tissue swelling, and her skin and extremity examination was unremarkable.  (Tr. 730.)  Further testing and a consultation with an allergist was advised.  (Tr. 730.)

At plaintiff's telehealth visit with Dr. Sprengel on August 12, 2020, plaintiff reported an acute flare up on her low back and joint pain, but she noted that her rash had disappeared and her thyroid medication had significantly decreased her swelling.  (Tr. 716.)  Plaintiff stated she was happy and had normal activity level, no chest pain, normal heart rate, no abdominal pain, no rash or skin lesions, no headache, and no dizziness.  (Tr. 716.)  She was prescribed Prednisone.  (Tr. 716.).

In her follow up appointment with Dr. Roumany on September 25, 2020, plaintiff stated that she was tolerating Hydroxychloroquine well without side effects and denied having any fever or rash.  (Tr. 793.)  Plaintiff denied pain in her joints and swelling.  (Tr. 793.)  On January 8, 2021, plaintiff told Dr. Roumany that she had some swelling around her mouth and her right eye, but no joint swelling.  (Tr. 817.)  Her eye examination was unremarkable regarding medication toxicity.  (Tr. 817.)  Plaintiff again reported tolerating her medication well without side effects.  (Tr. 817.)  Physical examination was normal, with normal joints, no

signs of synovitis or pain, and normal range of motion. (Tr. 818.) Her medications were continued. (Tr. 819.)

At her follow-up appointment with Dr. Wen on January 29, 2021, plaintiff continued to complain of weight gain and fatigue but her physical examination was within normal limits. (Tr. 835.) Her goiter was noted as clinically stable and a note was made to follow up next year. (Tr. 835.)

On April 16, 2021, plaintiff told Dr. Roumany she had aches and pains in her back and shoulder joints. (Tr. 861.) She had no swelling in joints or worsening sicca symptoms. (Tr. 861.) Plaintiff's examination was unremarkable, with normal muscle strength and symmetry in upper and lower extremities, and no signs of synovitis in joints. (Tr. 862.) No signs of pain were noted, and range of motion was normal. (Tr. 862.) Plaintiff was continued on Hydroxychloroquine and blood tests were ordered. (Tr. 863.)

Plaintiff sought emergent care for back pain on May 10, 2021. (Tr. 825.) Examination showed normal alignment and range of motion in the back, with diffuse, mild pain, tenderness and swelling in the thoracic and lumber spine. (Tr. 827.) She was discharged with a prescription for a muscle relaxant (Orphenadrine) and a non-steroidal anti-inflammatory (Meloxicam). (Tr. 827-28.)

Plaintiff saw Dr. Roumany again on October 14, 2021, complaining of pain and discomfort in the joints and muscles in her neck, shoulders and feet. (Tr. 897.)

19

She reported some swelling in her feet, fatigue, and trouble sleeping.  (Tr. 897.)
Examination of the joints of the upper and lower extremities showed no signs of
synovitis and normal range of motion, but pain in several myofascial tender points,
including the elbows, knees, trapezius muscle area, cervical and lumbar spine area.
(Tr. 898.)  Dr. Roumany suspected her symptoms were secondary to fibromyalgia
syndrome and added Flexeril at nighttime to her medication protocol.  (Tr. 899.)

On November 4, 2021, plaintiff visited New Madrid Medical for an annual
check-up.  (Tr. 958.)  She reported that her lupus was stable and that she had no
symptoms of hypothyroidism.  (Tr. 961.)  Her physical examination was
unremarkable.  (Tr. 962.)

On December 7, 2021, plaintiff reported some swelling in her hands, feet,
face, lips, and tongue, but no shortness of breath or swelling around the eyes.  (Tr.
919.)   Physical examination by Dr. Roumany was normal, with no signs of
synovitis in her joints, no signs of pain, and normal range of motion.  (Tr. 920.)
Her medications were continued.  (Tr. 921.)

Plaintiff reported swelling and a rash from generic Hydroxychloroquine to
Dr. Roumany on January 14, 2022.  (Tr. 931.)  She reported some swelling at times
in her hands, but denied worsening stiffness or fever.  (Tr. 931.)  She stated that
she was sleeping better with Flexeril.  (Tr. 931.)  Upon examination plaintiff was
in no acute distress and had some swelling around her lips with minimal redness,

but no pain or ulcers.  (Tr. 932.)  Her muscle strength was normal and symmetrical, and joint examination showed no signs of synovitis.  (Tr. 932.)  Plaintiff had some pain in several myofascial tender points including the elbows, knees, trapezius muscle area, second rib area, cervical and lumbar spine area.  (Tr. 932.)  However, her range of motion was normal.  (Tr. 932.)   Plaintiff was prescribed Mobic for swelling in her face and pain and noted that she should be switched to Plaquenil instead of generic Hydroxychloroquine.  (Tr. 933.)  Plaintiff was also prescribed an EpiPen for use as needed.  (Tr. 933.)  She was told she could take extra-strength Tylenol.  (Tr. 933.)

On February 17, 2022, plaintiff visited New Madrid Medical with complaints of pain and swelling in joints and "to request a letter for the YMCA and a letter for her school loans."  (Tr. 953.)[7]  Plaintiff stated that her hands and the back of her knees were swelling and in pain.  (Tr. 956.)  Plaintiff stated that she was "frustrated" with Dr. Roumany because "she [did] not feel like [he] really listen[ed] to her complaints."  (Tr. 956.)  Plaintiff stated that Plaquenil was not managing her joint pain.  (Tr. 956.)  Plaintiff claimed she was happy and had a normal level of activity.  (Tr. 956.)  She reported no rash or skin lesions.  (Tr. 956.)

_____

[7] Plaintiff complains that the ALJ selectively summarized her medical records, but she omitted from her description of this medical record that one of plaintiff's purposes in seeking treatment was "to request a letter for the YMCA in order to receive a discount to go there and exercise." (Tr. 956.)

Plaintiff's physical examination showed tenderness in the posterior knee and bilateral DIP/PIP joints, with some mild swelling in her hands, but was otherwise normal.  (Tr. 956.)  She was noted as having a lupus flare up and prescribed Prednisone, but was advised to continue her Plaquenil and see a different rheumatologist.  (Tr. 957.)

Plaintiff had an appointment with New Madrid Medical on May 4, 2022, complaining of swelling, itching and burning in her hands and feet.  (Tr. 982.)  Her physical examination results remained unchanged since her last visit.  (Tr. 985.)  She was given a prescription for Prednisone and Benadryl itch cream and advised to continue Plaquenil.  (Tr. 986.)

On May 16, 2022, plaintiff saw Dr. Roumany for a follow-up appointment and reported intermittent rash and swelling in her eyelids.  (Tr. 994.)  She denied significant discomfort or pain and had minimal sicca symptoms and no fever.  (Tr. 994.)  Her physical examination was within normal limits.  (Tr. 995.)  She was continued on her medications.  (Tr. 996.)

The very next day plaintiff saw rheumatologist Ryan J. Eaton, D.O., to establish care.  (Tr. 967.)  She reported recurrent swelling in fingers and toes, and intermittent swelling of her mouth, tongue and eyelids.  (Tr. 967.)  Physical examination showed 8 out of 18 tender points to palpation, but otherwise grossly normal strength in upper and lower extremities.  (Tr. 968.)  Pain was rated at 9.

(Tr. 968.)  Assessment was "unclear if the patient actually has SLE, Sjogren's, or other autoimmune disease," inflammatory polyarthritis, long-term use of high-risk medication, which was noted was tolerated without major adverse effects, and angioedema.  (Tr. 968-69.)

Plaintiff had a follow-up appointment with New Madrid Medical on August 8, 2022.  (Tr. 976.)  She complained of a flare up with swollen lips and bumps on her arms.  (Tr. 979.)  Physical examination remained unchanged from her last visit, and no skin rash or lesions were noted.  (Tr. 979.)  She was given a prescription of Prednisone and told to follow-up with Dr. Eaton.  (Tr. 980.)

Plaintiff followed up with Dr. Eaton on August 24, 2022.  (Tr. 970.)  She reported having issues with angioedema and urticaria.  (Tr. 970.)  Physical examination remained unchanged from her last visit.  (Tr. 971.)  Plaintiff was continued on Hydroxychloroquine and Prednisone.  (Tr. 971.)  Assessment noted that plaintiff's symptoms were most consistent with Sjögren's, and urticaria and Hashimoto's thyroiditis were added.  (Tr. 971.)

The medical records as a whole support the ALJ's RFC determination, as they repeatedly document normal muscle strength in her extremities, normal range of motion, no signs of synovitis, and only occasional mild swelling.  Plaintiff complains that the ALJ did not specifically cite her complaints of myalgia and joint pain or thoroughly summarize her rheumatology records when addressing her

complaints.   But it is well-established that an ALJ is not required to discuss every piece of evidence.  *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). Moreover, a mere deficiency in opinion writing is not a sufficient reason to set aside an ALJ's finding.  *Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021). Here, the ALJ's RFC is supported by substantial evidence and explained in adequate detail.  Here, plaintiff points to no treatment records or doctor's opinion in the record which supports disabling limitations.  It remains her burden to prove her RFC.  *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021).

The ALJ also considered plaintiff's consistent and conservative treatment course that consisted of oral medications such as Prednisone and Hydroxychloroquine, which improved her symptoms, in formulating her RFC. Plaintiff contends the ALJ substantially erred when he concluded that "if the claimant's symptoms were as restrictive as alleged, then one would expect a change in the medical course of treatment by her rheumatologist or other treating physician in this case.  Instead, the course of treatment has primarily been to keep with the same medications for the claimant."  (Tr. 50.)  Plaintiff argues that the ALJ impermissibly "played doctor" and substituted his own lay opinion that she would have been on a different treatment regimen if her symptoms were as severe as alleged.  ECF 10 at 7.  She also argues that the medical records show a change

in treatment because "she was seen by generalists and then specialists about her condition."  ECF 10 at 8.

The ALJ did not substantially err when considering plaintiff's conservative course of treatment, consisting of medication management, in evaluating her claim for benefits.  *See Buford v. Colvin,* 824 F.3d 793, 797 (8th Cir. 2016); *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (noting that in evaluating the claimant's subjective complaints, the ALJ properly considered the claimant's pattern of conservative treatment).  Plaintiff's improvement with conservative treatment is inconsistent with disabling impairments.  *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (ALJ's conclusions as to the severity of pain and limitations consistent with fact that claimant was prescribed generally conservative treatment).

 Moreover, the ALJ did not say plaintiff's treatment was never changed, nor did he fail to recognize that plaintiff sought treatment from specialists.  To the contrary, the ALJ specifically discussed that plaintiff was referred to, and treated by, rheumatologists and an endocrinologist.  Instead, the ALJ recognized that plaintiff was maintained on a consistent "medical course of treatment" by her rheumatologist that primarily consisted of the same medications.  Plaintiff's conservative treatment was one of many considerations the ALJ considered when fashioning plaintiff's RFC.  The ALJ also considered plaintiff's medical records

25

and objective findings discussed above, her part-time work as a home aide, the state agency's prior administrative medical findings, which the ALJ assessed in accordance with 20 C.F.R. § 404.1520c,[8] and plaintiff's functional limitations, when fashioning an RFC determination tailored to plaintiff's credible limitations. Overall, substantial  evidence of record adequately supports the ALJ's RFC determination, and that decision is entitled to deference.

Finally, plaintiff argues that the ALJ should have further developed the record if he "had concerns about the requirement of the treatment regimen."  ECF 10 at 8.  While the ALJ does have a duty to fully and fairly develop the record, that duty is not never-ending.  *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). The ALJ is not required to obtain additional medical evidence if the evidence of record provides a sufficient basis for the ALJ's decision.  *Adamczyk v. Saul*, 817 F. App'x 287, 290 (8th Cir. 2020); *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011).  Moreover, "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial."  *Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 517 n.3 (8th Cir. 2019) (cleaned up).

Here, the ALJ developed every crucial issue in plaintiff's case, and plaintiff fails to show that additional evidence would have altered the result of the decision;

---

[8] The ALJ assigned no weight to these opinions because they were formed without consideration of the entirety of the medical records.  Plaintiff does not challenge this finding.

therefore, the ALJ's decision is entitled to deference. *See Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014); *Weber v. Barnhart*, 348 F.3d 723, 725-726 (8th Cir. 2003). Here, the substantial evidence on the record as a whole supports the ALJ's RFC determination, so no additional consultative examinations or interrogatories to the treating physicians were required.

Based on plaintiff's medical records, treatment history, activities, and subjective complaints, to account for plaintiff's credible exertional limitations the ALJ properly limited plaintiff to light work consistent with the residual functional capacity. These limitations are consistent with plaintiff's treatment history, examinations and test results. None of the evidence of record supported greater restrictions on plaintiff's exertional limitations. Although plaintiff may believe that the ALJ should have assessed the medical evidence differently to support greater limitations, it is not my role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in his determination of plaintiff's RFC. *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016). Under these circumstances, the ALJ did not err in evaluating plaintiff's exertional limitations when fashioning her RFC, and his decision is entitled to deference.

In this case, the ALJ evaluated all of the evidence of record and adequately explained his reasons for the weight given this evidence in a manner consistent with the new regulations. Good reasons and substantial evidence in the record as a

whole support the ALJ's RFC determination, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice." *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Kalonda Sager's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 15th day of August, 2024.